UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DECORATIVE COMPONENTS
INCORPORATED, INC., et al.,

      Plaintiffs,

v.

ICON COMPUTING SOLUTIONS, INC.,
d/b/a/ ICON PARETO,

      Defendant.
                                 /

File No. 1:10-cv-1217

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter is before the Court on Plaintiffs' motion for partial summary judgment on their breach of contract claim (Count I) and on Defendant's breach of contract counterclaim (Dkt. No. 21). Also raised in Defendant's response brief is a cross-motion for summary judgment on Plaintiffs' claim under the Michigan Special Tools Lien Act (Count III). For the reasons that follow, Plaintiffs' motion and Defendant's cross-motion will be denied.

### I.

Plaintiffs manufacture commercial products of various kinds. Defendant is in the business of selling technology and technology platforms in the medical industry. In February 2010, Plaintiffs and Defendant began to explore a business relationship in which Plaintiffs would design and manufacture point-of-care mobile medical carts ("POC carts") for Defendant, who would equip the carts with their technology and sell them to medical care providers.

On February 19, 2010, the parties agreed to a letter of intent outlining their business understanding. (Dkt. No. 58, Ex. B.) In that letter, Plaintiffs agreed to take steps toward designing

and manufacturing (a) a cable management system for Defendant's existing Modo cart, (b) a redesign of Defendant's existing Modo cart addressing a number of areas of concern identified by Defendant, and (c) a new model of cart to replace Defendant's existing Modo cart. (*Id.*)

Plaintiffs allege that they proceeded in March to design the new cart, that Defendant placed five purchase orders for the carts on July 13, 2010,[1] and that at some unspecified time prior to placing the orders, Defendant approved the new design. (*Id.*)

After receiving samples of the newly manufactured POC carts, Defendant made several design request changes in September and October of 2010. (Dkt. No. 50 at 3; Dkt. No. 58 at 3.) Representatives from Plaintiffs flew to Defendant's headquarters several times to address Defendant's concerns. (Dkt. No. 58 at 3.) The parties' characterizations of these meetings and design changes are a main dispute in this case. Defendant alleges that Plaintiffs' design did not conform to the parties' agreement or industry standards, that the requested changes were attempts to bring the design into conformity, and that Plaintiffs failed to timely address all of the deficiencies. Plaintiffs, on the other hand, characterize the requests as post-production engineering changes. (Dkt. No. 50 at 3.) Plaintiffs also maintain that they accommodated and satisfied all of Defendant's requests.

It is undisputed that Defendant did not pay for Plaintiffs' design and manufacturing work. Defendant did provide Plaintiffs with a check for $533,582 on October 2010, but that check was dishonored on three occasions. (*Id.*) After manufacturing 4,030 POC carts without receiving payment, Plaintiffs halted production and filed this action. Defendant has filed a counterclaim (Dkt.

---

[1] These orders called for the production of approximately 6,500 carts over five delivery periods, for the total price of $7,338,507.

No. 21) alleging that the POC carts manufactured by Plaintiffs are nonconforming, and seeking damages resulting from Plaintiffs' alleged failure to deliver conforming goods

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of nonmovant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

**A. Breach of Contract Liability**

Plaintiffs seek summary judgment on their breach of contract claim on the basis that Defendant did not pay for any of the design or manufacturing services rendered. Plaintiffs also seek summary judgment on Defendant's breach of contract counterclaim. Defendant's affirmative defense (and the basis for Defendant's counterclaim) is that the POC carts produced by Plaintiff were nonconforming goods.

As this case involves a dispute of product design and performance, there are a number of

disputed technical issues which the Court is not prepared to decide on a motion for summary judgment. Whether or not the design and performance flaws identified by Defendant exist, and whether they were remedied by Plaintiffs in advance of this litigation are disputed questions of fact which should be reserved for trial. However, a much closer question is whether summary judgment is appropriate on the basis of Plaintiffs' argument that Defendant never provided design specifications.

Plaintiffs argue that their product could not be non-conforming because "[a]t no time did Defendant provide Plaintiffs with complete design specifications." (Dkt. No. 50 at 2.) Plaintiffs contend that all of the design problems raised by Defendants were merely post-production concerns raised by Defendant as part of a collaborative process, not "defects." Plaintiffs do not believe that Defendant can show nonconformity without some kind of design standard.[2]

In search of a standard, Defendant points to a letter of intent signed by the parties on February 19, 2010, which purportedly lists "specific objectives for the design of the POC Cart." (Dkt. No. 58 at 2.) Examination of the letter does not reveal any design specifications explicitly addressed to the new cart which Plaintiffs were to design and manufacture, though the letter does list a number of objectives for the related project of improving Defendant's existing Modo cart. Even granting Defendant's assertion that those objectives were understood to apply to the new design, they do not amount to detailed design specifications. Furthermore, the letter states that "this is a letter of intent only, which is nonbinding." (*Id.*)

There is considerable evidence supporting the view that this business relationship was

---

[2] Plaintiffs also allege in passing that Defendant approved a prototype of Plaintiffs' design in July (before the beginning of production). (Dkt No. 50 at 2.) However, this allegation is unsupported by any documentation, and Defendant denies it. (Dkt. No. 58 at 2-3.)

4

conceived and operated as an ongoing collaboration. The lack of a formal contract with explicit design specifications is one factor; indeed, the letter of intent states that "[t]he scope of this new model design will be subject to further discussion and definition." (*Id.*) Additionally, the documents cited by Defendant as evidence that it informed Plaintiffs that the new POC carts were nonconforming[3] contain no explicit rejection of the carts,[4] and would appear to be consistent with Plaintiffs' characterization of the changes as ongoing efforts to improve or modify the cart at Defendant's request.

      In the face of this evidence, Defendant maintains that the parties understood that the new POC cart would be benchmarked against the existing Modo cart, and that the new POC cart is nonconforming because it compares unfavorably with the older cart. This is a far more difficult means of showing nonconformity than the typical evaluation of a product with respect to detailed design specifications. However, granting all reasonable inferences in favor of Defendant, there remains a triable issue of fact as to whether the carts can be considered nonconforming goods.

## B. Plaintiffs' Special Tools Lien Act Claim

      Count III of Plaintiffs' complaint is a claim under the Michigan Special Tools Lien Act, which in some circumstances provides a lien on special tools used to manufacture goods. Defendant argues that Plaintiffs' claim must fail because the POC carts are not "special tools" but finished goods, and because Plaintiffs did not put required identifying information on the carts.

---

[3] Defendant relies on an August 16, 2010, "technology exhibit report" which identified "areas for improvement" based on comments received from medical professionals who previewed the new cart at a technology conference held in Nevada. (Dkt. No. 58, Ex. G.) Defendant also references an October 6, 2010, list of "items to finalize,"(Dkt. No. 58, Ex. M), and an October 28, 2010, email identifying a number of design issues and improvements. (Dkt. No. 58, Ex. L.)

[4] In fact, there is documented evidence that Defendant explicitly accepted at least 1900 of the carts. (Dkt. No. 50, Ex. 15.)

Plaintiffs concede that the Act does not cover the POC carts, which are indeed finished goods.  However, Plaintiffs maintain that they do have a lien under the Act pertaining to the tools which Plaintiffs created in order to manufacture the carts.  (Dkt. No. 62 at 6.)   This distinction was not addressed by Defendant.  Accordingly, Defendant's cross-motion will be denied.

### III.

Granting all reasonable inferences in favor of the nonmoving party, there remains a triable issue of fact as to whether the new POC carts were nonconforming goods.  As Defendant has raised the alleged nonconformity of the carts both as an affirmative defense to Plaintiffs' breach of contract claim and as the basis of Defendant's breach of contract counterclaim, Plaintiffs' motion for partial summary judgment will be denied.  Defendant's cross-motion for partial summary judgment on Plaintiffs' Special Tools Lien Act claim will also be denied.


Dated: <u>November 15, 2011</u>                                   /s/ Robert Holmes Bell
                                                                                      ROBERT HOLMES BELL
                                                                                      UNITED STATES DISTRICT JUDGE